UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| DAVID KEITH SWATZELL, | ) | |
|---|---|---|
| Petitioner, | ) ) ) | |
| v. | ) ) | Nos. 2:17-CV-52; 2:16-CR-33 |
| UNITED STATES OF AMERICA, | ) ) ) | *Judge Jordan* |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner David Keith Swatzell's pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1],[1] and the United States' response in opposition [Doc. 6]. The Court finds the materials thus submitted, together with the record of the underlying criminal case, conclusively show that Petitioner is not entitled to relief on the claims asserted in his motion. Accordingly, the Court will decide this matter without an evidentiary hearing. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). For the reasons discussed below, the Court will find that Petitioner's motion to vacate is without merit and, thus, will **DENY** and **DISMISS** his § 2255 motion **WITH PREJUDICE**.

### I. PROCEDURAL AND FACTUAL BACKGROUND

On March 8, 2016, a federal grand jury issued an indictment charging Petitioner and two co-defendants with conspiracy to distribute and to possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1)

---

[1] Unless otherwise noted, all docket references in this Memorandum Opinion are to the document numbers in Petitioner's civil case, Case Number 2:17-CV-52.

[Doc. 1, Case No. 2:16-CR-33]. Petitioner alone was charged with possession with the intent to distribute five grams or more of methamphetamine, an offense under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 4) [*Id.*]. Just under two months later, Petitioner entered into a plea agreement with the government [Doc. 28, Case. No. 2:16-CR-33].

The Court draws the facts from those to which Petitioner stipulated, as contained in the factual basis in the plea agreement [*Id.* at ¶ 4]. In the factual basis, Petitioner admitted that he was involved in a conspiracy to distribute methamphetamine in the Greeneville, Tennessee area of the Eastern District of Tennessee for financial gain and that he regularly supplied his two co-defendants and others with methamphetamine [*Id.* at ¶ 4(a)].

More specifically, Petitioner acknowledged that on February 22, 2017, he supplied approximately 36 grams of methamphetamine to his two co-defendants for purposes of resale and that they were caught later that day with some of the methamphetamine he had supplied to them and also with a loaded shotgun [*Id.* at ¶ 4(b)]. The shotgun, so Petitioner stipulated, had been used as collateral for a previous drug deal between Petitioner and one co-defendant, and Petitioner had returned the shotgun to that co-defendant during the drug transaction earlier that day [*Id.*].

In the early morning hours of March 1, 2017, a Greene County Deputy Sheriff saw Petitioner and a woman leave a local café in Greeneville [*Id*. at ¶4(c)]. The Deputy Sheriff knew that the woman had an active arrest warrant against her so he ran the license plate on the vehicle that the couple entered and saw that the plate had been switched [*Id.*]. The Deputy Sheriff pulled behind the vehicle, activated the blue lights on his cruiser, and pursued the vehicle until Petitioner blew out the engine on the vehicle [*Id.*]. The vehicle was searched and approximately 30 grams of methamphetamine, several ounces of marijuana, hundreds of small baggies commonly

associated with drug trafficking, several pipes and various other paraphernalia, digital scales, and 7 cell phones were discovered [*Id.*].

During an interview, Petitioner admitted to selling methamphetamine to numerous individuals. He agreed, for purposes of the plea agreement, that he should be held responsible for at least 150 grams but less than 500 grams of actual methamphetamine [*Id.*]. Petitioner agreed to plead guilty to Count 1, the methamphetamine conspiracy, as charged in the indictment, with the remaining count to be dismissed at sentencing [*Id.* at ¶¶ 1-2]. The plea agreement provided that, in exchange for his guilty plea, Petitioner waived his right to file a direct appeal, with one exception, and his right to file a § 2255 motion or a collateral attack on his conviction or sentence, excluding claims of prosecutorial misconduct or ineffective assistance of counsel [*Id.* at ¶ 10(a) and (b)].

On June 14, 2016, some six weeks after entry of the plea agreement, Petitioner pled guilty to the methamphetamine conspiracy charge in count 1 in the indictment [Doc. 41, Case. No. 2:16-CR-33]. Thereafter, the United States Probation Office issued a Presentence Investigation Report ("PSR") to assist the Court in sentencing Petitioner [Doc. 45, PSR (sealed), Case No. 2:16-CR-33].

Using United States Sentencing Guideline ("USSG") § 2D1.1 for § 846 offenses involving at least 50 grams but less than 150 grams of actual methamphetamine, the probation officer who prepared the PSR determined that Petitioner's base offense level was 30 [*Id.* at ¶ 18]. Two levels were added under USSG § 2D1.1(b)(1) for possession of a dangerous weapon, and the addition of two levels for reckless endangerment during flight under USSG § 3C1.1 resulted in an adjusted offense level of 34 [*Id.* at ¶¶ 19, 22-23]. A two-level and a one-level reduction for acceptance of responsibility yielded a total offense level of 31 which, along with a criminal history category of

VI, resulted in an advisory Guidelines range of 188 months to 235 months [*Id.*, ¶¶ 25-27, 47, 68]. The PSR noted that Petitioner's statutory sentence was ten years to life imprisonment [*Id.* at ¶ 67].

Petitioner objected to the dangerous-weapon enhancement as recommended in the PSR, but the Court overruled his objection based on his stipulations regarding the firearm, dismissed the remaining count upon motion of the government, and sentenced Petitioner to 188 months' imprisonment, the lowest sentence in his Guidelines range, to be served concurrently with any sentence in his then-pending Greene County Sessions Court case, Case No. GS-16CR-642, and to be followed by five years of supervised release [Docs. 47, 74, and 788, Case No. 2:16-CR-33].

In keeping with the appeal waiver in the plea agreement, Petitioner did not file a direct appeal. Instead, he submitted this timely pro se § 2255 motion to vacate on April 4, 2017, alleging several claims of ineffective assistance of counsel and one claim of prosecutorial misconduct [Doc. 1].

## II. STANDARDS OF REVIEW

### A. Motions to Vacate

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal"

to secure collateral relief.  *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

**B.     Ineffective Assistance of Counsel**

When a § 2255 movant claims he was denied his Sixth Amendment right to effective assistance of counsel, a court must presume that counsel provided effective assistance, and the movant bears the burden of showing otherwise.  *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003).  To meet that burden, a movant must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).  "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation."  *Smith v. Mitchell,* 348 F.3d. 177, 201 (6th. Cir. 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result."

5

*Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). In the guilty plea context, to establish prejudice a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (internal citation omitted).

### III. DISCUSSION

Petitioner's claims of ineffective assistance presented in his § 2255 motion to vacate are groundless. Petitioner's final claim evinces a desire to pursue allegations involving prosecutorial misconduct, but the claim is conclusory. The Court addresses each claim in turn.

**A.     No Proof of Quantity and Quality of Methamphetamine** [Doc. 1 at 4].

In this claim, Petitioner first asserts that he cannot be charged with conspiracy involving 50 grams or more of methamphetamine because there was insufficient proof showing the existence of that drug quantity. Petitioner acknowledges that he supplied a co-defendant with 26 grams of methamphetamine (the stipulated amount was 36 grams, not 26 grams [Doc. 28 at ¶ 4(b), Case. No. 2:16-CR-33]), but contends that no cash was exchanged, while failing to explain the legal

6

significance of an illicit drug transaction that involves no cash. Moreover, so Petitioner maintains, he was not caught in any act of distribution. Instead, as Petitioner points out, his co-defendant was the one who was caught riding around in a U-Haul with the drugs and who "got hit with the meth" [*Id.*]. Petitioner similarly maintains that the purity of the methamphetamine was not challenged and that counsel gave him ineffective assistance by failing to press the above issues in Petitioner's defense.

### 1. Quantity

In its response, the government argues that the drug quantity (i.e., 50 grams or more of methamphetamine) is inherent in the crime to which Petitioner pled guilty. Thus, so Respondent suggests, there was no legitimate basis on which to ground an objection to that particular quantity of controlled substance. The Court agrees with Respondent's argument.

Petitioner's indictment alleged, as count 1, that he conspired to distribute and possess with the intent to distribute "fifty (50) grams or more of methamphetamine" [Doc. 1 at 1, Case No. 2:16-CR-33]. Petitioner thereafter pled guilty to count 1 of the indictment as charged. Petitioner's admissions that he committed that drug-trafficking conspiracy involving 50 grams or more of methamphetamine during the entry of his guilty plea relieved the government of any burden it had at sentencing to show that the amount of methamphetamine was 50 grams or more. *See United States v. Young*, 847 F.3d 328, 366 (6th Cir. 2017) (recognizing that "§ 841(b)(1)(A) prescribes mandatory sentences for conspiracy convictions involving certain threshold amounts of drugs" (citing *United States v. Robinson*, 547 F.3d 632, 639 (6th Cir. 2008)); *United States v. Leachman*, 309 F.3d 377, 384 (6th Cir. 2002) (referring to the quantity of drugs in a §§ 841 and 846 controlled substance offense as the "enhancement element" and finding that a defendant waived his right to

challenge the drug amount by pleading guilty to an indictment properly charging the specified drug amount as an element of the offense).

## 2. Purity

The same is true of a challenge to the purity of the 50 grams or more of methamphetamine for which Petitioner was charged and to which he pled guilty. The § 841(a)(1), (b)(1)(A), and § 846 violation alleged as count 1 in the indictment specified that it involved "fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers," and not "500 grams or more of a *mixture or substance containing a detectable amount* of methamphetamine, its salts, isomers, and salts of its isomers," *see* § 841(b)(1)(A)(viii) (italics added) [Doc. 6, Case No. 2:16-CR-33]. Because the methamphetamine offense contained both in the indictment and in Petitioner's plea agreement involved actual methamphetamine, as opposed to a mere substance or mixture containing the drug, and because the government did not choose to have the methamphetamine tested for purity so as to furnish a basis for an increased sentence, the Court concludes that purity of the drug was not an issue that needed to be pursued. *United States v. Moreno*, No. 5:19CR002, 2019 WL 3557889, at *4 (W.D. Va. Aug. 5, 2019) (commenting that "because the determination of purity can only be ascertained after laboratory testing, 'the prevalence of high-purity methamphetamine virtually guarantees that a defendant's base offense level under the Guidelines will substantially increase if the methamphetamine is tested for purity'" (quoting *United States v. Ferguson*, No. CR 17-204 (JRT/BRT), 2018 WL 3682509, at *4 (D. Minn. Aug. 2, 2018)).

Moreover, Petitioner's guilty plea "established the character and purity of the drug for sentencing purposes, rendering his present allegations regarding the inadequacy of the evidence possessed by the government beside the point." *United States v. Willinger*, 95 F. App'x 281, 284 (10th Cir. 2004). And too, Petitioner stipulated in his plea agreement that he should be held

8

responsible for trafficking in "150 to 500 grams of actual methamphetamine" [Doc. 28, at ¶ 4(c), Case No. 2:16-CR-33].

### 3. Counsel's Representation

Because there was no foundation for counsel to attack the quantity or purity of the methamphetamine involved in the conspiracy given Petitioner's stipulation and guilty plea to the quantity and type of methamphetamine, the Court concludes that counsel did not render ineffective assistance in failing to object to the drug amount or its purity. *See Christopher v. United States*, No. C07-0701-JCC, 2007 WL 4531782, at *5 (W.D. Wash. Sept. 10, 2007) (finding that the plea agreement and Rule 11 hearing transcript showed a petitioner's admission to manufacture and possess "methamphetamine" which amounted to a concession as to both the amount and type of methamphetamine), *report and recommendation adopted as modified*, No. C07-0701-JCC, 2007 WL 4026342 (W.D. Wash. Nov. 15, 2007); *see also Polonio v. United States,* No. 01 CIV. 11817 (LAP), 2002 WL 31627978, at *5 (S.D.N.Y. Nov. 21, 2002) (ruling that where petitioner "agreed in her plea agreement that the drug quantity involved was [a specified amount] . . ., counsel's failure to [object] to drug quantity cannot constitute ineffective assistance").

By the same token, any such an objection would have been rejected based on Petitioner's stipulations and guilty plea to the quantity and type of methamphetamine. "It is not error for a court to sentence a defendant on the basis of facts to which the defendant himself admitted." *United States v. Salas*, 281 F. App'x 496, 500 (6th Cir. 2008) (citing *United States v. Booker*, 543 U.S. 220, 244 (2005)); *see also United States v. Poole*, 97 F. App'x 587, 588 (6th Cir. 2004) (denying relief on direct appeal where defendant admitted under "oath the facts establishing the essential elements of the offenses"); *cf., Perrone v. United States*, No. 09-CR-30016-DRH, 2016

9

WL 2910004, at *5 (S.D. Ill. May 19, 2016) (denying § 2255 relief where a petitioner admitted to the elements of the crime in a plea agreement), *aff'd*, 889 F.3d 898 (7th Cir. 2018).

Furthermore, Petitioner has not alleged that, but for counsel's failure to make the objection here cited, he would not have pled guilty but would have insisted on standing trial. Therefore, because there was no prejudicial performance on the part of counsel, this entire claim lacks merit.

### 4. Validity of Petitioner's Plea

To the extent that Petitioner's claim at bottom is that, on counsel's advice, he pleaded guilty to the distribution conspiracy involving 50 or more grams of methamphetamine when there was insufficient evidence of the amount and purity of the methamphetamine, the law is settled that, following the entry of an unconditional plea, a petitioner thereafter "may only attack the voluntary and intelligent character" of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The question thus becomes whether Petitioner's plea was voluntary and knowing.

Before accepting a guilty plea, a district court must advise the defendant of certain rights, address the defendant in open court, determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement), and determine that a factual basis exists for the plea. Fed. R. Crim. P. 11(b). This Court scrupulously complies with Rule 11 of the Federal Rules of Criminal Procedure governing acceptance of guilty pleas, and the record reflects that it did so here [Doc. 41, Case No. 2:16-CR-33]. Had Petitioner expressed anything other than a complete understanding of the rights he was relinquishing by virtue of his plea, of the plea agreement provisions, and of the factual basis that supported the guilty plea or had he indicated that the plea was induced by threats or promises or was not voluntarily and knowingly made, the Court immediately would have stopped the proceedings to clarify any problems that arose. The proceedings then would have terminated unless the Court was convinced that

10

Petitioner's plea was intelligently and voluntarily entered with full understanding of the consequences of pleading guilty. The record indicates that during the colloquy, Petitioner's answers, which are always given under oath, satisfied the Court of the constitutional validity of his plea [*Id.*].

As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). This Court finds that Petitioner's guilty plea was made knowingly and voluntarily. A valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" *Class v. United States*, 138 S. Ct. 798, 805, 200 L. Ed. 2d 37 (2018) (quoting *United States v. Broce*, 488 U.S. 563, 573-74 (1989)). So, it is here with respect to all sub-sets of Petitioner's first claim for collateral relief.

**B.      Not Actively Distributing Drugs When Apprehended [Doc. 1 at 4]**

In his second main claim, Petitioner maintains that he was not caught in any act of distribution, with the logical inference being that, absent such proof, he could not be guilty of participating in a drug operation conspiracy [*Id.*]. Again, Petitioner contends that a co-defendant, who was caught with methamphetamine, was the one who "got hit with the meth" [*Id.*]. Respondent maintains that, contrary to Petitioner's suggestion, his offense of conviction (methamphetamine trafficking conspiracy) did not require that he himself be caught with 50 grams or more of methamphetamine on a single occasion because the nature of a drug conspiracy is the distribution or possession with the intent to distribute the subject drug over a period of time. That too is a correct statement of the law.

To be found guilty on a charge of conspiracy to engage in drug trafficking, a defendant must be aware of the object of the conspiracy and voluntarily associate himself with its purpose. *United States v. Hodges*, 935 F.2d 766, 772 (6th Cir. 1991). A defendant "need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *Id.* (quoting *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)). Furthermore, the Sixth Circuit has held that "[w]here a defendant is part of a jointly undertaken criminal activity involving drugs, the defendant is accountable for all quantities of contraband with which [he] was directly involved and ... all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [he] jointly undertook." *United States v. Young*, 847 F.3d 328, 367 (6th Cir 2017) (citations and internal citation marks omitted) (alterations in original). And, a "jointly undertaken criminal activity" includes a conspiracy. *Id.* (citation omitted).

Petitioner admitted to the elements of a conspiracy as set forth above [Doc. 28 at ¶ 4, Case No. 2:16-CR-33]. Petitioner specifically acknowledged that he was involved in a conspiracy to distribute methamphetamine, that he supplied his co-defendants and others with methamphetamine on a regular basis, and they were participating in this drug trafficking operation for financial gain [*Id.* at ¶4(a)]. Further, Petitioner stipulated that he had 30 grams of methamphetamine in the vehicle when he was stopped and arrested and that his co-defendant was apprehended with 36 grams of methamphetamine which Petitioner had supplied to him earlier that day [*Id.* at ¶ 4(a)-(c)].

As an admitted participant in the conspiracy involving that quantity of methamphetamine, he was properly charged with conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine. Therefore, under the law and facts of this case, counsel had no

legitimate basis for objecting to the "50 grams or more" enhancement element of the §§ 841 and 846 offense on the basis that Petitioner was not caught with that amount of controlled substance. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise meritless issues). Nor does prejudice ensue from a failure to make a groundless objection. *See, e.g., Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *United States v. Fry*, 831 F.2d 664, 669 (6th Cir. 1987) (failure to raise a meritless objection at sentencing not ineffective assistance).

### C. Firearm Enhancement [Doc 1 at 5]

Counsel's next shortcoming, so alleges Petitioner, is his failure to raise the issue of the two-point enhancement to Petitioner's sentence, under USSG § 2D1.1(b)(1), for possession of the shotgun.[2] Petitioner points out that he was not caught with a shotgun in his possession, that a co-defendant was apprehended with the methamphetamine and a shotgun in his possession, and that Petitioner did not commit a crime with the shotgun [*Id.*].

However, contrary to Petitioner's allegation, counsel objected to the two-point enhancement for possession of a dangerous weapon, to wit the loaded shotgun, and authored and filed a sentencing memorandum elaborating on the objection [Docs. 47, 49, and 56, Case No. 2:16-CR-33]. The Court carefully considered the objection, noting Petitioner's stipulations in the plea agreement as to the shotgun (i.e., that Petitioner regularly supplied his co-defendants with methamphetamine, that the shotgun had been used as collateral for a previous drug deal between

---

[2] Guideline 2D1.1(b)(1) applies "[i]f a dangerous weapon (including a firearm) was possessed . . . ." USSG § 2D1.1 (2015). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* cmt. n.11(A). This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.*

13

Petitioner and the co-defendant, that Petitioner returned the shotgun to the co-defendant during their drug transaction on February 22, 2016, and that the co-defendant was arrested that same day in possession of the methamphetamine and the loaded shotgun) [Doc. 74, Case. No. 2:16-CR-33]. Thereafter, the Court found the enhancement to be applied properly and overruled the objection, citing to Sixth Circuit authority stating that weapons traded for drugs satisfied the requirements of USSG 2D.1.1(b)(1) [*Id.*].

Counsel cannot be ineffective for failing to make objections that counsel in fact made. *Cf., Williams v. Bobby*, No. 1:09-CV-317, 2010 WL 5184803, at *8 (S.D. Ohio Sept. 3, 2010) ("A lawyer cannot be ineffective for failure to make an objection unless he or she in fact failed to make the objection."), *report and recommendation adopted sub nom. Williams v. Warden, Ohio State Penitentiary*, No. 1:09-CV-317, 2010 WL 5276988 (S.D. Ohio Dec. 15, 2010). The record belies Petitioner's claim regarding counsel's failure to object to the dangerous firearm enhancement and shows it to be groundless.

Finally, Petitioner's request "to suppress evidence dealing with the gun" comes too late. This is so because by entering a valid and unconditional guilty plea, Petitioner waived his right to challenge any non-jurisdictional defects in the pre-plea proceedings. *See Tollett*, 411 U.S. at 267.

**D.  Cellphones [Doc. 1 at 7]**

Petitioner maintains that of the several cellphones discovered in his vehicle during his arrest only one belonged to him. Petitioner asserts that he gave permission to the officers to look at conversations and texts in his cellphone but no one gave the officers permission to look at and "go in" to the other cellphones [*Id.*]. Petitioner's implied claim is that the officers exceeded the scope of his consent to search his own cellphone by searching all the other cellphones located in his vehicle and that counsel gave ineffective assistance by failing to raise that issue.

14

Respondent counters that Petitioner identifies no information gleaned from the cellphones, does not allege that any information so obtained was used against him, and does not establish that he had an expectation of privacy in cellphones that belonged to others.

The Court finds this allegation factually deficient and conclusory. The purpose of filing a suppression motion is to exclude evidence secured through violations of the Fourth and Fifth Amendments to the Constitution. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (finding that evidence obtained or derived from an illegal search or seizure must be excluded). If no such evidence is obtained or identified by a petitioner as having resulted from a constitutional violation, then there is nothing to seek to suppress. *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (stating that claims asserted in a § 2255 motion "in the form of conclusions without any allegations of facts in support thereof" are "legally insufficient to sustain review" of the motion).

In addition, Petitioner's assertion that officers searched cellphones found in his vehicle that were not his cellphones without securing permission from the cellphones' owners is not a claim that he himself can advance because he lacks standing to assert the violation of rights of the owners of the other cellphones. *See United States v. Salvucci*, 448 U.S. 83, 95 (1980) ("limit[ing] the availability of the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights").

Counsel cannot be ineffective for the failure to pursue a claim which has no legal basis. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise groundless issues).

### E. Cumulative Error [Doc. 1 at 7]

Petitioner's last claim in this category of claims is that there is substantial evidence that counsel did not represent Petitioner and was ineffective as demonstrated by counsel's failure to raise the above issues [*Id.*]. The Court reads this allegation as a claim that counsel's errors, when considered collectively, amount to ineffective assistance.

"Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair." *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007)). Thus, a reviewing court evaluating claims of ineffective assistance must consider "the combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case." *Id.* (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006)).

However, the Court has found that none of the attorney failings asserted above resulted in the violation of Petitioner's Sixth Amendment right to effective assistance. It is impossible to accumulate errors that were never made. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (holding that no relief is warranted if "there are simply no errors to cumulate."). This claim too lacks merit.

### F. Prosecutorial Misconduct [Doc. 1 at 8]

Embedded in Petitioner's final claim of ineffective assistance is this statement: "I would like to pursue prosecutorial misconduct" [Doc. 1 at 8]. No other facts accompany this bald statement of intent to advance a claim, such as any details regarding a specific incident that Petitioner views as misconduct on the part of the prosecutor, any circumstances surrounding that incident, or an explanation as to how any questioned behavior adversely affected his case.

A successful § 2255 claim must be clothed with facts that show entitlement to relief. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings (requiring a movant to "state the facts supporting each ground"). Because a petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255, Petitioner's conclusory statement merely expressing a desire to litigate claims of prosecutorial misconduct does not state a cognizable § 2255 claim. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

## IV. CONCLUSION

For the reasons discussed in this Memorandum Opinion, Petitioner's § 2255 motion to vacate [Doc. 1] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A certificate of appealability should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that

reasonable jurists could not find that the dismissal of such claims were debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealibility.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge